UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

LISA JONES,                        )
                                   )
    Plaintiff,                     )     Civil No. 9-246-GFVT
                                   )
V.                                 )
                                   )
LIFE INSURANCE COMPANY             )     **MEMORANDUM OPINION**
OF NORTH AMERICA,                  )     **& ORDER**
                                   )
    Defendant.                     )
                                   )
                                   )
                                   )

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff's Motion to Reverse the Defendant's Administrative Decision [R. 17], Defendant's Response [R. 21], and Plaintiff's Reply [R. 23].

**I.**

This case presents issues for the Court to consider under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. The Plaintiff, Lisa Jones ("Jones") began working as a claims representative for State Farm in 1992. While employed there, Jones obtained insurance coverage under State Farm's group long-term disability policy. The insurance provider for the policy is the Defendant, Life Insurance Company of North America ("LINA"). As part of her job, Jones needed to be able to read and drive outside the office from time to time for investigations in the field.

Beginning in 1994, Jones began visiting Dr. John Hoskins, a retinal ophthalmologist, and was eventually diagnosed with the eye disease uveitis, which caused Jones to experience visual loss [R. 10, 451]. In July of 2003, Jones stopped working at State Farm and applied for long

1

term disability ("LTD") benefits from LINA under the plan. As part of the basis of her claim, Dr. Hoskins informed LINA that, in his opinion, Jones' eye condition prevented her from driving at night or during inclement weather and that her visual difficulties prevented her from reading or doing computer work as required by her job [R. 10, 424]. Specifically, Dr. Hoskins restricted Jones' reading to a total of three hours per day [R. 10, 277]. Dr. Hoskins' opinion was that the "restrictions and limitations prevent[ed] [Jones] from performing the duties of her occupation as a Claim Representative." [R. 10, 424]. Based on this information alone, LINA "pre-approved" benefits for Jones beginning in January of 2004 [R. 10, 411-14].

Jones began looking for other employment, first on her own and later with the assistance of Intracorp, a vendor employed by LINA to assist Jones in finding new employment through a vocational rehabilitation program. The job search was not successful. The vocational rehab counselor responsible for Jones' case stated that the search "experienc[ed] problems due to a combination of limitations, geographic region, and type of jobs available." [R.10, 291].

Jones' eyesight began to improve in 2004, prompting LINA to request an independent examination to determine if Jones was, in fact, disabled under the policy.[1] LINA contacted MLS National Medical Evaluation Services, an independent company, to find a local ophthalmologist to conduct the independent examination. The ophthalmologist selected was Dr. James Huffman. After reviewing medical records[2] and conducting an examination of Jones himself, Dr. Huffman concluded that:

---

[1] The parties argue at length in their briefs over the appropriateness of the internal procedure LINA used before deciding to request an independent examination. The Court notes that the internal procedure LINA used is immaterial as requesting such a review was part of its contractual rights [R. 10, 143] ("The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require.").

[2] The parties disagree about the quantum of medical records Dr. Huffman actually

> [B]ased upon review of the available medical records as well as [my] examination[,] . . . Ms. Jones does have significant visual impairment in the right eye but the left eye is near normal. Ms. Jones would be able to function in an unrestricted fashion in most job settings. However, she would have difficulty seeing very fine print, that being smaller than newsprint, and would need assistive devices if the job requires seeing such print, including magnification aides. However, I do not feel that assistive devices are needed for working at a computer or with most normal written print.

[R. 10, 218-19]. In essence, Dr. Huffman disagreed with Dr. Hoskins about the scope of Jones' impairment. It is worth noting that Dr. Huffman did not think it was necessary to impose restrictions on driving or "working at a computer or with most normal written print." [*Id*. at 219]. These were the types of restrictions that Jones conducted her prior unsuccessful job search under when going through vocational rehabilitation. After Dr. Huffman issued his report to LINA, LINA determined, relying on Dr. Huffman's report, that Jones no longer met the policy definition of disability and would no longer receive benefits effective July 15, 2005 [R. 10, 202-04].

It is this decision, which relied on the report of Dr. Huffman, which is the basis of Jones' suit. Essentially, Jones claims that LINA breached the policy agreement by not providing her benefits when she was entitled to them.

After the initial denial of benefits, Jones appealed to LINA for review of its decision twice. Both times LINA reached the same decision; Jones was not disabled under the terms of the policy [*See* R. 17, 9-17]. In the course of making the first appeal, Jones submitted letters dated July 11 and July 26, 2006, to LINA from Dr. Hoskins. In these letters, Dr. Hoskins stated that, in his opinion, Jones would "be unable to perform her previous work tasks, which involve

---

reviewed.

3

extensive computer work and the need for nighttime driving on an indefinite basis into the future." [R. 10, 171]. Basically, Dr. Hoskins reiterated his belief that Jones was disabled. Jones also argued that Dr. Huffman's opinion should be discounted because Jones thought Dr. Huffman did not adequately review her medical records before examining her. In March of 2007 LINA notified Jones that Jones appeal had been denied.

Dissatisfied with the outcome of her first appeal, Jones appealed a second time to LINA. LINA used Intracorp, a sister company, to locate a doctor to review the paper record [R. 17, 14]. Intracorp contracted with Dr. Kenyon to conduct the review and he ultimately determined that, "[t]he medical record does not support restrictions precluding Ms. Jones from driving and/or extensive reading on computer screens." [R. 10, 571].

During both appeals processes, both LINA and Dr. Kenyon were essentially reviewing the opinions of Dr. Hoskins and Dr. Huffman and determining whose opinion had more merit. The opinions of those two doctors is still what this case is about; the parties' disagreement is primarily about LINA's reliance on Dr. Huffman's report and Jones's insistence that Dr. Hoskins' opinion should be controlling. Because of the deferential standard LINA's decision is entitled to, the Court disagrees with Jones and finds that LINA's denial of benefits was proper.

## II.

Jones argues that LINA's decision denying her benefits should be reversed. Yet that decision is entitled to a high degree of deference. Jones concedes that the "arbitrary and capricious" standard is applicable here because the policy grants such discretion to LINA [R. 17, 17]. The Court notes that if LINA had not retained such discretion, then Jones' challenge would be reviewed *de novo* by the Court. *University Hospital of Cleveland v. Emerson Electric*, 202 F.3d 839, 845 (6th Cir. 2000) ("It is by now well-established that courts review such challenges

4

to benefit determinations under the de novo standard, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). It is this retention of discretion which ultimately proves fatal to Jones' motion.

When a Court reviews a benefit determination under the "arbitrary and capricious" standard, it should be upheld "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome . . . ." *Davis v. Kentucky Finance Companies Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). "Determining whether the plan administrator's decision was arbitrary and capricious means determining whether it was rational and in good faith, not right." *Dials v. SMC Coal & Terminal Co.*, 891 F.Supp. 373, 376 (E.D. Ky. 1995) (citing *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989). When conflicts of interest exist, however, as Jones alleges here, they "should be taken into account as a factor in determining whether the . . . decision was arbitrary and capricious." *University Hospital of Cleveland*, 202 F.3d at 846 (quoting *Davis*, 887 F.2d at 694).

### III.

### A.

For all intents and purposes, Jones' challenge to LINA's decision is a factual challenge. Jones is asking this court to review the record and the weight of the evidence and reach a different conclusion than LINA did. When weighing the evidence, the "arbitrary and capricious" standard initially tips the scales heavily in favor of LINA. *See supra* Part II. But there are certain factual conditions that, when present, partially negate the deference administrators like LINA are entitled to when the standard is applied. *See Calvert v. Firstar Finance, Inc.* 409 F.3d 286, 293 (6th Cir. 2005) (stating that the arbitrary and capricious standard does not change when a conflict is present, only its application). Jones argues that modifying the application of the

standard is appropriate in this case.

First, Jones argues that LINA has a conflict of interest because it was both the ultimate decision maker and the payer of benefits. The Supreme Court recently reaffirmed that administrators acting in those dual capacities do have a conflict of interest and that when such a conflict is present, "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 105 (2008) (citation omitted). Nonetheless, the weight a conflict is due depends on the circumstances of each individual case and its existence is certainly not enough to change the review of the decision from deferential to *de novo*. *Id*. at 106. Jones' argument is well taken, however, and the degree of deference LINA is entitled to when applying the standard is properly diminished.

Jones also argues that another conflict is present because of the manner in which Dr. Huffman was chosen to be the doctor who conducted the independent medical examination of Jones. LINA contracted with MLS for MLS to locate a local ophthalmologist to conduct the examination. Jones does not argue that Dr. Huffman is conflicted; she argues instead that there is a conflict because MLS, the intermediate party, was the defendant in an unrelated case [R. 17, 19]. MLS's unrelated conduct is irrelevant because Jones does not explain how it affected Dr. Huffman's ability to provide an unbiased report after conducting his own examination of Jones. Thus, Dr. Huffman's report should not be viewed more skeptically as a result. *Cf. Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (finding a conflict is present when the reviewing doctor is in the employ of the administrator, the exact circumstance not present in the instant case).

Finally, Jones argues that Dr. Kenyon's review of the record during the second appeal is entitled to less deference because Dr. Kenyon was an agent of Intracorp, a sister company of

LINA [R. 17, Exs. 1-4]. It is fair to conclude that Dr. Kenyon was effectively in the employ of LINA, the administrator. Accordingly, his report on appeal should be viewed somewhat more skeptically. *See Moon*, 405 F.3d at 381-82.

**B.**

The policy at issue in this case defines "disability" by stating that:

> An employee is Disabled if, because of Injury or Sickness,
> 1. he/she is unable to perform all the material duties of his/her regular occupation, or solely due to Injury or Sickness, he/she is unable to earn more than 80% of his/her Indexed Coverage Earnings; and
> 2. after Disability Benefits have been payable for 24 months, he/she is unable to perform all the material duties of any occupation for which he/she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he/she is unable to earn more than 80% of his/her Indexed Covered Earnings.

[R. 10, 130].

Despite LINA's arguments to the contrary, there are two independent ways an employee could be disabled under either the "own occupation" or "any occupation" provisions above. First, the employee could be unable to perform the material duties of his own job (or "any" job if analyzing under "2"). Second, the employee's condition could be of the type that he is unable to earn more than 80% of his indexed earnings [*See id.*]. Because of the conflicting reports from Dr. Hoskins and Dr. Huffman, however, the inquiry is actually merged.

Dr. Hoskins opinion was that, because of her condition, Jones' driving should be "restricted to daytime and good weather" [R. 10, 424] while her "reading type activities [should be restricted] to three hours a day on an indefinite, possibly permanent, basis." [R. 10, 455]. Dr. Huffman's opinion was that Jones would be able "to function in an unrestricted fashion in most job settings" and that "assistive devices are [not] needed for working at a computer or with most

normal written print." [R. 10, 218-19].

According to Dr. Hoskins, then, Jones was disabled under either of the policy definitions. It was plain that Dr. Hoskins thought she could not perform the material functions of her current job [R. 10, 424] (Dr. Hoskins affirms that his recommended restrictions would "prevent her from performing the duties of her occupation as a Claims Representative."). Similarly, it was not possible for Jones, while searching with restrictions, to find employment where she was earning 80% of her indexed earnings. This is evidenced by the fact that Jones was unable to find employment during the vocational rehabilitation program while searching with these restrictions in place.

According to Dr. Huffman, however, Jones' condition did not meet the conditions for disability under either definition. Dr. Huffman thought it unnecessary to impose any restriction on Jones' daily reading while also concluding that Jones would not need assistive devices while reading normal print [R. 10, 218-19]. While Dr. Huffman did not opine on whether he thought driving restrictions were necessary, he did state that, in his opinion, Jones could "function in an unrestricted fashion in most job settings." [*Id*.]. Thus, if Dr. Huffman is to be believed, Jones could have performed both her old job as a Claims Representative and could have found a job making over 80% of her indexed earnings. In other words, Dr. Huffman did not think Jones was disabled.

Jones seeks to discredit Dr. Huffman's report by arguing that he did not review all of the necessary medical records prior to examining Jones [R. 17, 22]. Jones relies on *Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F.3d 356 (6th Cir. 2002), for the proposition that "[r]eliance on a medical examiner that has not been provided all of the pertinent medical information is arbitrary and capricious." [R. 17, 22]. The facts of *Spangler* are very different,

however. In *Spangler*, a consulting company reviewed the insured's incomplete paper record before concluding that the insured was not disabled. This conclusion was relied on by the administrator in denying the insured's disability benefits. *Spangler*, 313 F.3d at 361-62. This is factually distinct from the facts in the instant case because Dr. Huffman did much more than base his opinion on a paper record, incomplete or otherwise. He actually examined Jones and created his own medical opinion based, in large part, on his own independent review of Jones' condition [*See* R. 10, 218-19]. As such, Jones cannot successfully rely on *Spangler* to minimize the impact of Dr. Huffman's report.

Jones also seeks to analogize her case to *Gordon v. Northwest Airlines, Inc.*, 606 F.Supp.2d 1017 (D. Minn. 2009). In *Gordon*, the Court found that the administrator acted arbitrarily and capriciously because it did not properly consider the fact that a prior vocational rehabilitation search found that there were no jobs available for the insured. *Id*. at 1038. For Jones, the vocational rehabilitation search reached largely the same conclusion [*See* R. 10, 48]. The search in this case, however, occurred while only looking for jobs that could accommodate someone under the restrictions Dr. Hoskins imposed [*See id.*]. Dr. Huffman disagreed such restrictions were appropriate and found that Jones would be able to function "in an unrestricted fashion in most job settings." [R.10, 218-19]. Thus, it is certainly possible that a search conducted with the lack of restrictions that Dr. Huffman imposed would have been successful. Jones agreed at the time of the search as she stated, "I am concerned that there could have been some suitable job opportunities that were missed because I was looking, at [LINA's] direction, for a job to *fit with my restrictions*." [R. 10, 193] (emphasis added). In other words, it was the restrictions imposed by Dr. Hoskins that resulted in the unsuccessful job search, not Jones' impairment. When Dr. Huffman opined that Jones' impairment did not rise to the level requiring

9

restrictions, he changed (at least in his mind and those of anyone relying on his opinion) the scope of the job market for Jones. This difference in opinion about the scope of the job market also results in differences of opinion between the two doctors about whether Jones was disabled under the policy [*See* R. 10, 130]. Thus, simply relying on the lack of fidelity to one's own vocational search is not enough to rely on in this case as it was in *Gordon*. The vocational search conducted here was done under restrictions which another doctor later decided were not necessary. For these reasons, the two cases are too factually dissimilar for *Gordon* to be persuasive authority for Jones.

As stated previously, this case is really about the different opinions of Dr. Hoskins and Dr. Huffman and whether LINA's decision to rely on Dr. Huffman's opinion rather than Dr. Hoskins was arbitrary and capricious.[3] It is true that Dr. Hoskins was Jones' longtime treating physician, but there is "[n]othing in [ERISA] itself, however, suggest[ing] that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Thus, the mere fact that Dr. Hoskins was Jones' long term physician does not mean that his opinion was entitled to be given more weight by LINA.

The fact that Dr. Hoskins had examined Jones many times over the years, however, is a fact that could cause this Court, if reviewing the facts *de novo*, to determine that Dr. Hoskins' opinion should be treated differently than Dr. Huffman's opinion. But this Court is not

---

[3] While Jones also argues about LINA's conduct on appeal, both appeals upholding the decision to deny benefits relied, in large part, on Dr. Huffman's opinion. Thus, Jones' case must rise or fall based on whether reliance on Dr. Huffman's opinion, regardless of exactly when such reliance occurred, meets the standard.

10

conducting a *de novo* review of the doctors' respective opinions. This Court must merely determine whether LINA's reliance on Dr. Huffman's opinion was "rational and in good faith, not right." *Dials v. SMC Coal & Terminal Co.*, 891 F.Supp. 373, 376 (E.D. Ky. 1995). Even when viewed more skeptically because of the existing conflicts, *supra* Part III.A, LINA's decision to rely on Dr. Huffman's report was reasonable.

When LINA reviewed Jones' medical records to determine whether or not she was disabled, the only physicians who had conducted examinations of Jones were Dr. Hoskins and Dr. Huffman. The two doctors disagreed. They were both specialists. Both had examined her and were entitled to their differing opinions about her condition. To say it was unreasonable or irrational to rely on the expert opinion of one over the other is untenable. Jones' entire case is based on Dr. Hoskins' opinion. She does not present evidence that other doctors had a similar opinion that she was disabled or that her condition required her to work under restrictions. She relies on Dr. Hoskins' opinion alone. That is not to say, however, that LINA necessarily presents more compelling evidence as it primarily relies only on Dr. Huffman's opinion.

The ultimate flaw with Jones' case is that she presents this Court with a situation where the only two examining doctors came to different conclusions about the presence of a disability, and she asks this Court to choose one as being more meritorious than the other. That is not within the Court's province at this time; the Court must merely determine if LINA's reliance on Dr. Huffman's opinion was rational. *Davis v. Kentucky Finance Companies Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). Jones argues that LINA "still must offer a reasoned explanation for its disagreement with [Dr. Hoskins]." [R. 23, 4]. This stance conflicts with Supreme Court jurisprudence. According to the Supreme Court, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts

with a treating physician's evaluation." *Black & Decker Disability Plan*, 538 U.S. at 834. Dr. Huffman's opinion as an examining doctor certainly qualifies as "reliable evidence." He examined a portion of Jones' medical records and conducted his own independent examination [R. 10, 213-21]. Thus, LINA was not required to explain why it chose to rely on Dr. Huffman's opinion over Dr. Hoskins' opinion. Furthermore, the general rule in this Circuit is that,

> when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based on the evidence, for the plan administrator's decision.

*McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

Because LINA was faced with the medical opinions of only two examining doctors, their reliance on one doctor's opinion over the other cannot be said to be unreasonable or irrational. Thus, LINA's decision meets the standard and cannot be held to be arbitrary and capricious. For the foregoing reasons, it is hereby ordered that Jones' Motion to Reverse the Administrative Decision [R. 17] is **DENIED**.

This the 29th day of September, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge